94 P.3d 397 (2004)
STATE of Washington, Respondent,
v.
Steven LEYDA, Appellant.
No. 52217-5-I.
Court of Appeals of Washington, Division 1.
July 19, 2004.
*398 Jennifer Dobson, Nielsen Broman & Koch, Seattle, WA, for Appellant.
Dana Cashman, King County Prosecutors Office, Seattle, WA, for Respondent.
ELLINGTON, A.C.J.
Steven Leyda used a stolen credit card four times at the Bon Marche. We hold that separate charges of identity theft for each use of the card did not violate double jeopardy, because the unit of prosecution for identity theft is each use of stolen personal information, not each piece of stolen information. We also reject Leyda's contentions about the adequacy of the charging documents and jury instructions, and hold the merger doctrine did not apply. We therefore affirm.

BACKGROUND
Steven Leyda and his girlfriend Nikkoleen Cooley used a stolen Bon Marche credit card four times on three different days in October and November 2002. The fourth time, the cashier became suspicious. Leyda and Cooley were eventually arrested.
Leyda was charged with four counts of identity theft in the second degree, one count for each time he used the card. He was also charged with two counts of theft in the third degree, one count of theft in the second degree, and one count of possession of stolen property in the second degree, all arising from these transactions. Leyda was convicted *399 by a jury on all counts, and this appeal followed.
Double Jeopardy. Leyda contends that multiple convictions for identity theft constitute double jeopardy when based on the use of a single stolen credit card.[1] When a defendant is convicted of multiple violations of the same statute, the double jeopardy analysis focuses on what the legislature intends as the "unit of prosecution," that is, what act is punishable under the statute.[2] If the legislature does not clearly denote the unit of prosecution in a criminal statute, doubt is resolved in favor of the accused. Id. Prosecutors may not avoid the limitations of the double jeopardy clause by dividing a single crime into" `a series of temporal or spatial units.'"[3]
The first step is to analyze the language of the identity theft statute. The plain language of RCW 9.35.020 indicates the legislature intended to penalize the use of stolen information.[4]
Leyda argues, however, that the legislature's reference to "a means of identification or financial information"[5] indicates an intent that the unit of prosecution for identity theft is the number of pieces of financial information or means of identification obtained or possessed, not the number of crimes committed with that information. Leyda points out that the degree of the crime depends on the "aggregate total of credit, money, goods, services, or anything else of value."[6] If the total is greater than $1,500, the offense constitutes first degree identity theft, a class B felony.[7] If the total is less than $1,500, or if nothing of value is obtained, the offense is second degree identity theft, a class C felony.[8] Leyda contends this "mandatory aggregation" shows that the legislature meant "to encompass multiple acts into a single unit of crime for each piece of identification that has been stolen, no matter how many other crimes have been intended or what damage is sustained."[9]
Leyda misreads the statute. "Aggregate total" refers to the combined sum of all of *400 the various benefits the defendant obtains when he or she "uses the victim's means of identification or financial information."[10] Nothing in this portion of the statute suggests that the key is the number of pieces of stolen information. Rather, the emphasis is plainly on each use of the stolen information.
Under Leyda's reading of the statute, repeated use of a stolen credit card for weeks or months would be punished no more severely than a single use of the same card. One who possessed a sack of stolen credit cards, intending to use them but never doing so, would commit as many crimes as the sack held cards, while the thief who possessed only one card, but used it over and over, would commit only one crime. The identity thief would thus have a strong incentive to use a stolen card as often and for as much as possible, knowing that he or she could be charged with only one count. We do not believe the legislature intended these results.
Further, identity theft causes several different kinds of harm. A thief who steals money harms the victim only once, whether or not he later spends the money. But a thief who uses stolen personal information to make purchases steals the information, and the credit, and the goods. These are separate harms, identified by the legislature to be separately punished.
We hold that the unit of prosecution for identity theft is the use of the victim's means of identification or financial information with intent to commit a crime. Leyda used the stolen credit card in four separate transactions. Double jeopardy was not violated when Leyda was convicted of four counts of second degree identity theft.
Merger. Leyda contends his possession of stolen property conviction should have merged into his convictions for second degree identity theft because proof that he possessed the stolen credit card was a necessary element of identity theft. But
the merger doctrine is a rule of statutory construction which only applies where the Legislature has clearly indicated that in order to prove a particular degree of crime (e.g., first degree rape), the State must prove not only that a defendant committed that crime (e.g., rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (e.g., assault or kidnapping).[11]
This doctrine has no application here. Possession of stolen property does not elevate identity theft to a higher degree, nor does identity theft elevate possession. In addition, possession of a stolen credit card is not an element of identity theft; possession of a stolen credit card number would satisfy that statute.
Charging Document and Jury Instructions. To be constitutionally adequate, both charging documents and jury instructions must include all essential elements of the crimes charged.[12] "An essential element is one whose specification is necessary to establish the very illegality of the behavior charged."[13] Leyda argues the charging document and jury instructions were constitutionally defective because they lacked what he contends is an essential element of second degree identity theft and third degree theft: the value of the property unlawfully obtained. On those counts, the State alleged no dollar value (the State alleged a value for goods obtained only for the count of theft in the second degree). The question before us, therefore, is whether property value is an essential element of the crimes of second degree identity theft and third degree theft. It is not.
Value is not an essential element unless there is a minimum threshold value *401 that must be proven to establish the crime.[14] A person commits identity theft in the second degree when "the accused ... uses the victim's means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value that is less than one thousand five hundred dollars in value, or when no credit, money, goods, services, or anything of value is obtained."[15] A person commits third degree theft when "he or she commits theft of property or services which ... does not exceed two hundred and fifty dollars in value."[16] The references to value in each of these statutes establishes a ceiling above which the offense is elevated to a higher degree, not a floor that must exist to support the charge or conviction. Thus, value is not an essential element of either second degree identity theft or third degree theft, and need not be alleged in the charging document or included in jury instructions to convict a defendant of the crimes.[17]
Affirmed.
WE CONCUR: COX, C.J., and COLEMAN, J.
NOTES
[1] The United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Washington State Constitution provides that "[n]o person shall be ... twice put in jeopardy for the same offense." Wash. Const. art. I, § 9. Washington's clause provides the same protection as the federal clause. In re Personal Restraint of Davis, 142 Wash.2d 165, 171, 12 P.3d 603 (2000).
[2] State v. Adel, 136 Wash.2d 629, 634, 965 P.2d 1072 (1998).
[3] Id. 635, 965 P.2d 1072 (quoting Brown v. Ohio, 432 U.S. 161, 169, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)).
[4] RCW 9.35.020 provides:

(1) No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime.
(2)(a) Violation of this section when the accused or an accomplice uses the victim's means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value in excess of one thousand five hundred dollars in value shall constitute identity theft in the first degree. Identity theft in the first degree is a class B felony.
(b) Violation of this section when the accused or an accomplice uses the victim's means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value that is less than one thousand five hundred dollars in value, or when no credit, money, goods, services, or anything of value is obtained shall constitute identity theft in the second degree. Identity theft in the second degree is a class C felony.
(3) A person who violates this section is liable for civil damages of five hundred dollars or actual damages, whichever is greater, including costs to repair the victim's credit record, and reasonable attorneys' fees as determined by the court.
(4) In a proceeding under this section, the crime will be considered to have been committed in any locality where the person whose means of identification or financial information was appropriated or resides, or in which any part of the offense took place, regardless of whether the defendant was ever actually in that locality.
[5] RCW 9.35.020(1) (emphasis added).
[6] RCW 9.35.020(2)(a), (b).
[7] RCW 9.35.020(2)(a).
[8] RCW 9.35.020(2)(b).
[9] App. Br. at 19-20.
[10] RCW 9.35.020(2)(a), (b).
[11] State v. Vladovic, 99 Wash.2d 413, 420-21, 662 P.2d 853 (1983). See also State v. Parmelee, 108 Wash.App. 702, 710, 32 P.3d 1029 (2001) ("The merger doctrine is relevant only when a crime is elevated to a higher degree by proof of another crime proscribed elsewhere in the criminal code.").
[12] State v. Hopper, 118 Wash.2d 151, 156, 822 P.2d 775 (1992); State v. Miller, 131 Wash.2d 78, 90-91, 929 P.2d 372 (1997).
[13] State v. Ward, 148 Wash.2d 803, 811, 64 P.3d 640 (2003) (citation omitted).
[14] State v. Rogers, 30 Wash.App. 653, 655, 638 P.2d 89 (1981).
[15] RCW 9.35.020(2)(b).
[16] RCW 9A.56.050(1).
[17] Leyda contends this conclusion is inconsistent with our supreme court's decision in State v. Moavenzadeh, 135 Wash.2d 359, 956 P.2d 1097 (1998). There, the State charged Moavenzadeh with six counts of "Theft in the Second [or Third] Degree," without alleging a value element for any of the charges. Id. at 361, 956 P.2d 1097. There was no way for Moavenzadeh to distinguish between the two crimes with which he was charged. The court found the charges constitutionally defective because "the property value elements of these crimes do not appear in any form in the information." Id. at 364, 956 P.2d 1097. That case is factually distinguishable. Leyda was charged with second and third degree theft in separate counts; the State alleged the required value element in the second degree theft charge. Leyda was thus on notice that he was accused of second degree theft for wrongfully obtaining property belonging to Bon Marche and "that the value of such property did exceed $250." Clerk's Papers at 8. This distinguished that count from the lesser charges of third degree theft. A person of common understanding would comprehend that the lesser theft charge concerned value that did not exceed $250. See RCW 10.37.050(6).