[No. 36086-8-I.   Division One.   May 19, 1997.]
THE STATE OF WASHINGTON, *Respondent,* v. MOSES L. TAYLOR, *Appellant.*

---

*Kimberly N. Gordon* and *Elaine L. Winters* of *Washington Appellate Project*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Lloyd Corgan, Deputy*, for respondent.

BECKER, J. — This appeal concerns a restitution order in a case of welfare fraud. We reverse for lack of a causal connection between the crime of conviction—second degree theft—and the damages awarded.

Welfare fraud is a form of theft, the degree of which depends on the monetary amount involved. Welfare fraud in the first degree is theft of a sum greater than $1,500.[1] The State alleged Moses Taylor fraudulently received $9,074 in welfare benefits. A jury convicted him of the lesser included offense of second degree theft, which is theft of an amount between $250 and $1,500.[2] The trial court nevertheless ordered Taylor to pay $9,074 in restitution to the State, ruling that "the amount that was testified to by the state is the amount that they were damaged."

Taylor contends the trial court was without authority to order restitution in an amount greater than $1,500. With this contention, we disagree. The general rule is that a trial court may impose restitution for damage that is a foreseeable consequence of the criminal act for which the defendant was charged and convicted.[3] Accordingly, it is well established that the amount of restitution may exceed the dollar limitations of the crime of conviction when the damage that results from the underlying criminal act is greater than the statutory amount. For example, in *State v. Rogers*[4] we upheld a $9,500 restitution award when the defendant was convicted for possessing stolen truck parts worth between $250 and $1,500. We also upheld a restitution award exceeding the dollar limitation of second degree possession of stolen property in *State v. Mead*,[5] and an award exceeding the limit of third degree malicious mischief in *State v. Selland*.[6] " 'If the victims of the crime have sustained a loss greater than the value shown in support of the conviction, it does not

---

[1]RCW 74.08.331; *State v. Campbell*, 125 Wn.2d 797, 803, 888 P.2d 1185 (1995).

[2]RCW 9A.56.040.

[3]*State v. Landrum*, 66 Wn. App. 791, 799, 832 P.2d 1359 (1992).

[4]*State v. Rogers*, 30 Wn. App. 653, 656, 638 P.2d 89 (1981).

[5]*State v. Mead*, 67 Wn. App. 486, 836 P.2d 257 (1992).

[6]*State v. Selland*, 54 Wn. App. 122, 772 P.2d 534, *review denied*, 113 Wn.2d 1011 (1989).

serve the objective of reparation to those victims to limit restitution to the lesser amount.' "[7]

While restitution is not necessarily limited by the definition of the crime, the State must still prove a causal connection between the crime of conviction and the victim's damages.[8] The question is whether the damage or injury was "a foreseeable consequence of the defendant's criminal acts."[9] In determining whether a causal connection exists we look not to the name of the crime, but to the underlying criminal act established by the conviction.[10] For example, in *State v. Rogers*, the underlying criminal act established by the conviction was the possession of stolen truck parts. A foreseeable consequence of possessing stolen truck parts is that the victim is deprived of the use of the entire truck, thus restitution was held proper for the full value of the truck.[11] In *State v. Mead*, the criminal act was possession of various stolen household items. We approved a restitution award for those items, but disallowed an additional amount for items damaged as the result of a burglary for which the defendant was not convicted. In *State v. Selland*, the defendants were convicted for blowing a hole in a mobile home by exploding two large firecrackers. We affirmed a restitution award for the amount of damage caused by the explosion.

The difficulty with the award of $9,074 in the present case is that the jury's verdict does not establish an underlying criminal act that could serve as the basis for a restitution award greater than $1,500. The amount of $9,074 is the total of the welfare checks and food stamps Taylor received on behalf of his household between July 1992 and January 1994. The State claimed that Taylor was disqualified during each month of this period because

[7]*Selland*, 54 Wn. App. at 125 (quoting *State v. Rogers*, 30 Wn. App. at 657).

[8]*Landrum*, 66 Wn. App. at 799.

[9]*Landrum*, 66 Wn. App. at 799.

[10]*Landrum*, 66 Wn. App. at 799.

[11]*Rogers*, 30 Wn. App. at 656.

he had unreported income and resources exceeding the eligibility limit. The State presented evidence that throughout this period Taylor drove a luxury car, made high lease payments on a house he planned to buy, and had household income over the eligibility limit for welfare payments once his girlfriend, who earned a salary, moved in with him. Taylor disputed most of the State's case. He presented evidence that he had no equity in the car, and that he was making the lease payments on the house as agent for his girlfriend. He admitted she lived with him, but only for two months during the charging period.

Taylor received benefits monthly over a two-year period during which the factors determining his eligibility did not remain constant. To find that he was guilty of second degree theft—less than $1,500—the jury must have found him ineligible during some of that period, but eligible during the rest. As the State concedes, there is no way to identify the culpable act relied on by the jury for conviction. On this record it is impossible to say that Taylor's culpable acts deprived the State of the total amount of money Taylor received in benefits.

Accordingly, the order of restitution is reversed. The case is remanded to the trial court for entry of an order of restitution in an amount reflecting the loss to the State resulting from the crime of conviction.

COLEMAN and COX, JJ., concur.